***FILED***
6/25/2025

U.S. DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

JRS/MGD:PJC/AB
F. #2021R01037

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

MUJJAHID HUQ,

               Defendant.

I N D I C T M E N T

Cr. No. 1:25-cr-00213(FB)(MMH)

(T. 18, U.S.C., §§ 371, 982(a)(1), 982(a)(7), 982(b)(1), 1347, 1957(a), 1957(b), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p))

- - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    Background

    A.    Medicare and Medicaid

        1.    Medicare was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

        2.    Medicare was divided into multiple parts. Medicare Part D provided prescription drug coverage to persons who were eligible for Medicare.

        3.    Medicare beneficiaries obtained Part D benefits in two ways: (a) by joining a Prescription Drug Plan, which covered only prescription drugs, or (b) by joining a Medicare Advantage Plan, which covered both prescription drugs and medical services

(collectively, "Part D Plans"). These Part D Plans were operated by private companies approved by Medicare and were often referred to as drug plan "sponsors."

4. CMS assigned pharmacies a national provider identification number ("NPI"). A pharmacy dispensing medications to a beneficiary used its assigned NPI when submitting a claim for reimbursement under Medicare Part D. A pharmacy was permitted to submit claims for reimbursement under Medicare Part D only for medications actually dispensed and was required to maintain records verifying that it dispensed the medications.

5. A pharmacy could participate in Medicare Part D by entering into a retail network agreement: (a) directly with a Part D Plan; (b) with one or more Pharmacy Benefit Managers ("PBMs"); or (c) with a Pharmacy Services Administration Organization ("PSAO"). A PBM acted on behalf of one or more Part D Plans. Through a Part D Plan's PBM, a pharmacy could join a Part D Plan network. A PSAO contracted with PBMs on behalf of the pharmacy.

6. Typically, a Medicare beneficiary enrolled in a Part D Plan obtained prescription medications from a pharmacy authorized by the beneficiary's Part D Plan. After filling a beneficiary's prescription, the authorized pharmacy submitted the claim either directly to a Part D Plan or to a PBM that represented the Part D Plan. The pharmacy provided the beneficiary's identification number as well as the pharmacy's NPI with the claim. The Part D Plan or the PBM determined whether the pharmacy was entitled to payment for each claim. Then, the Part D Plan or PBM, either directly or through a PSAO, reimbursed the pharmacy for the claim.

7. Medicaid was a federal and state health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was

responsible for overseeing Medicaid in participating states, including New York. Individuals who received benefits under Medicaid were referred to as "recipients."

8. Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. In New York, Medicaid provided coverage to its recipients for prescription drugs. Medicaid recipients could obtain their prescription drug benefits from pharmacies either through "fee-for-service" enrollment or through Medicaid Managed Care plans, which were administered by private insurance companies that were paid by Medicaid.

9. Medicare, Medicare drug plan sponsors, Medicaid and Medicaid Managed Care plans were all "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

B. The Defendant and Relevant Entities and Individuals

10. The defendant MUJJAHID HUQ was a pharmacist who was licensed by New York State. HUQ maintained a personal checking account ending in 6414 (the "HUQ Account") at Financial Institution-1, an entity the identity of which is known to the Grand Jury.

11. Salaam Pharmacy Inc. ("Salaam"), which operated as a retail pharmacy, was a New York corporation located at 155 Crystal Street, Brooklyn, New York. The defendant MUJJAHID HUQ owned Salaam.

12. An-Noor Pharmacy Inc. ("An-Noor"), which operated as a retail pharmacy, was a New York corporation located at 35 101st Avenue, Brooklyn, New York. The defendant MUJJAHID HUQ beneficially owned An-Noor.

4

13.     Meghna Pharmacy Inc. ("Meghna"), which operated as a retail pharmacy, was a New York corporation located at 77-06 101st Avenue, Ozone Park, New York.  The defendant MUJJAHID HUQ beneficially owned Meghna.

14.     Noor Pharmacy Inc., doing business as Ozone Park Pharmacy ("Ozone Park Pharmacy"), which operated as a retail pharmacy, was a New York corporation located at 74-01 101st Avenue, Ozone Park, New York.  The defendant MUJJAHID HUQ beneficially owned Ozone Park Pharmacy.

15.     Gateway Pharmacy Inc. ("Gateway"), which operated as a retail pharmacy, was a New York corporation located at 1184 Elton Street, Brooklyn, New York.  The defendant MUJJAHID HUQ owned Gateway.

16.     Rahma Pharmacy Inc. ("Rahma"), which operated as a retail pharmacy, was a New York corporation located at 964 Broadway Street, Buffalo, New York.  The defendant MUJJAHID HUQ beneficially owned Rahma.

17.     Co-Conspirator-1, an individual whose identity is known to the Grand Jury, was the record owner of Meghna.

18.     Co-Conspirator-2, an individual whose identity is known to the Grand Jury, was the defendant MUJJAHID HUQ's wife.

19.     Co-Conspirator-3, an individual whose identity is known to the Grand Jury, was the record owner of Rahma.

II.     <u>The Health Care Fraud Scheme</u>

20.     From approximately January 2018 to December 2023, the defendant MUJJAHID HUQ, together with others, submitted and caused the submission of claims for reimbursement to Medicare, Medicare drug plan sponsors, Medicaid and Medicaid Managed

Care plans for prescription medications purportedly dispensed by Salaam, An-Noor, Ozone Park Pharmacy and Gateway to beneficiaries and recipients, which were, in fact, never dispensed to the beneficiaries and recipients and/or were induced by the payment of illegal kickbacks and bribes (the "Claims").

21.     Among other things, the defendant MUJJAHID HUQ and his employees submitted the Claims in volumes that far exceeded the amount of prescription medications Salaam, An-Noor, Ozone Park Pharmacy and Gateway obtained from wholesale distributors from which those pharmacies purchased pharmaceutical products.

22.     From approximately January 2018 to approximately December 2023, Salaam, An-Noor, Ozone Park Pharmacy and Gateway received approximately $2.1 million in reimbursement for the Claims from Medicare, Medicare drug plan sponsors, Medicaid and Medicaid Managed Care plans.

23.     In furtherance of the scheme, the defendant MUJJAHID HUQ and his employees paid illegal kickbacks and bribes to beneficiaries and recipients to induce them to fill prescriptions at Salaam, An-Noor, Ozone Park Pharmacy and Gateway, including in the form of over-the-counter items such as lotions and perfumes, as well as New York City Transit MetroCards.  HUQ, together with others, also paid illegal cash kickbacks and bribes to one or more medical providers to induce them to send prescriptions to Rahma.

24.     To conceal the scheme, the defendant MUJJAHID HUQ, together with others, made false statements to CMS and the New York State Board of Pharmacy, among others, regarding HUQ's ownership of An-Noor, Meghna, Ozone Park Pharmacy and Rahma.

25.     Upon receiving reimbursement from Medicare, Medicare drug plan sponsors, Medicaid and Medicaid Managed Care plans for the Claims, the defendant MUJJAHID

HUQ used fraud proceeds to benefit himself, including by engaging in transactions that exceeded $10,000.

## COUNTS ONE THROUGH THREE
(Health Care Fraud)

26. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

27. In or about and between January 2018 and December 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MUJJAHID HUQ, together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud one or more health care benefit programs, as defined in Title 18, United States Code, Section 24(b), to wit: Medicare, Medicare drug plan sponsors, Medicaid and Medicaid Managed Care plans, and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items and services.

28. On or about the dates specified below, within the Eastern District of New York and elsewhere, the defendant MUJJAHID HUQ, together with others, submitted and caused to be submitted the following false or fraudulent claims, in an attempt to execute, and in execution of the scheme described above:

| Count | Purported Recipient | Medication | Approximate Date of Claim | Approximate Amount Paid |
|---|---|---|---|---|
| ONE | Individual-1, an individual whose identity is known to the Grand Jury | Xeljanz | June 27, 2020 | $4,525.49 |

| Count | Purported Recipient | Medication | Approximate Date of Claim | Approximate Amount Paid |
|---|---|---|---|---|
| TWO | Individual-2, an individual whose identity is known to the Grand Jury | Sodium Bicarbonate Powder | May 27, 2021 | $203.42 |
| THREE | Individual-3, an individual whose identity is known to the Grand Jury | Symbicort | June 6, 2023 | $384.15 |

(Title 18, United States Code, Sections 1347, 2 and 3551 et seq.)

## COUNTS FOUR AND FIVE
(Engaging in Unlawful Monetary Transactions)

29. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

30. On or about the dates listed below, within the Eastern District of New York and elsewhere, the defendant MUJJAHID HUQ, together with others, did knowingly and intentionally engage in one or more monetary transactions, to wit: the transactions set forth below, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: health care fraud, in violation of Title 18, United States Code, Section 1347, knowing that the property involved in such monetary transactions represented the proceeds of some form of unlawful activity:

| Count | Approximate Date of Transaction | Description of Transaction |
|---|---|---|
| FOUR | June 15, 2021 | HUQ withdrew approximately $565,206.19 from the HUQ Account. |

| Count | Approximate Date of Transaction | Description of Transaction |
|---|---|---|
| FIVE | March 24, 2022 | HUQ withdrew approximately $150,000 from the HUQ Account. |

(Title 18, United States Code, Sections 1957(a), 1957(b), 2 and 3551 et seq.)

COUNT SIX
(Conspiracy to Make False Statements)

31. The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

32. In or about and between January 2018 and December 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MUJJAHID HUQ, together with others, did knowingly and willfully conspire, in a matter involving one or more health care benefit programs, to wit: Medicare and Medicaid, to (a) falsify, conceal and cover up by trick, scheme and device one or more material facts, and (b) make one or more materially false, fictitious and fraudulent statements and representations, and make use of one or more materially false writings and documents knowing the same to contain one or more materially false, fictitious and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items and services, in that HUQ, together with others, misrepresented his ownership of An-Noor, Meghna, Ozone Park Pharmacy and Rahma, contrary to Title 18, United States Code, Section 1035(a).

33. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant MUJJAHID HUQ, together with others, did commit and cause the commission of, among others, at least one of the following:

## OVERT ACTS

(a) On or about January 27, 2021, HUQ notarized Co-Conspirator-1's signature on an attestation filed with the New York State Board of Pharmacy regarding the storage of drugs in Meghna's basement.

(b) On or about March 1, 2021, HUQ sent a WhatsApp message that included a photograph of Co-Conspirator-1's driver's license and wrote, "Owner of Meghna, if inspectors asks [sic], she comes in on Sundays."

(c) On or about March 11, 2021, HUQ created a document that listed HUQ as the "Owner Representative" and Co-Conspirator-3 as the "Temporary Custodian of Rahma."

(d) On or about May 12, 2021, HUQ sent a WhatsApp message to his employees stating, "Guys we can't have Meghna pharmacy stuff in ozone, please ask me before doing things that are dumb and reckless.  We dont [sic] want inspectors to tie in that they are the same stores et. [sic], these are big Ted [sic] flags when they visit."

(e) On or about December 29, 2021, HUQ signed a New York State Board of Pharmacy record listing Co-Conspirator-1 as Meghna's owner.

(f) In or about March 2022, HUQ sent a message to Co-Conspirator-3 regarding Rahma that said, "As you all know, this is MY pharmacy."

(g) In or about March 2022, HUQ sent a message to Co-Conspirator-3 regarding Rahma that said, "It's MY store, I put it in your name temporarily."

(h) In or about March 2022, HUQ sent a message to Co-Conspirator-3 regarding Rahma that said, "You have until 6 pm tomorrow before we leave for our flight back, to give us what is rightfully ours."

    (i)  In or about March 2022, HUQ created a document discussing the transfer of ownership from Co-Conspirator-3 to his mother, which stated, "Now we are putting it in my mothers [sic] name, it's a formality to make it look legitimate for third parties."

    (j)  On or about March 14, 2022, Co-Conspirator-3 sent a message to HUQ that said, "This document indicates that I knowingly lied to the federal government and other insurance companies."

    (k)  On or about March 14, 2022, in response to a message from Co-Conspirator-3 that said, "My lawyers are telling me I can end up going to jail,"

    (l)  On or about March 14, 2022, HUQ sent a text message response to Co-Conspirator-3 that stated, "Last places [sic] on earth I want for you is in jail."

    (m)  On or about April 8, 2022, HUQ signed a business signature card for a Rahma business bank account that listed him as Rahma's "Treasurer" and listed his mother as "President."

    (n)  On or about November 22, 2023, Co-Conspirator-2 notarized Co-Conspirator-1's signature on a New York State Board of Pharmacy record listing Co-Conspirator-1 as Meghna's owner.

  (Title 18, United States Code, Sections 371 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS ONE, TWO, THREE AND SIX

  34.  The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts One, Two, Three and Six, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal,

that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offenses.

35. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS FOUR AND FIVE

36. The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts Four and Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

37. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

  (a) cannot be located upon the exercise of due diligence;

  (b) has been transferred or sold to, or deposited with, a third party;

  (c) has been placed beyond the jurisdiction of the court;

  (d) has been substantially diminished in value; or

  (e) has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

                    A TRUE BILL

                    _____
                    FOREPERSON

By: *Whitman G.S. Knapp, AUSA*
JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

*By Patrick J. Campbell, Trial Attorney*
LORINDA LARYEA
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE